**OVERMAN CUSHION TIRE CO., Inc., v.
GOODYEAR TIRE & RUBBER
CO., Inc.**

No. 463.

Circuit Court of Appeals, Second Circuit.

July 17, 1933.

See, also (D. C.) 48 F.(2d) 213; (C. C. A.) 48 F.(2d) 215; (C. C. A.) 59 F.(2d) 998.

Charles Neave, of New York City, and F. O. Richey and B. D. Watts, both of Cleveland, Ohio, for appellant.

Robert W. Byerly, of New York City, for appellee.

Before MANTON, SWAN, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The appellant has been held an infringer of patent No. 1,092,078 for an automobile tire [40 F.(2d) 460 (C. C. A. 2)], and the issue of damages resulting therefrom was referred to a master. The master's report was approved by the court below, which stated that the infringement had been "conscious and deliberate," and that the appellee "had been subjected to protracted, vexatious, and expensive litigation" and had suffered damages by "deprivation of what, save for the infringements, would have been earned by the plaintiff." Exercising its discretion under the statute, the court doubled the amount of the award. The award allowed was a reasonable royalty because the exact amount of damages could not be proved. Wallace & Tiernan Co. v. City of Syracuse, 45 F.(2d) 693 (C. C. A. 2); U. S. Code, title 35, § 70 (35 USCA § 70).

The patent covered a cushion tire having the parts of its rubber beyond the ends of its flanges forming two straight rubber struts with a triangular opening between them. Its utility was found by this court to lie in the fact that "Rubber placed in such form develops the faculty of taking the force of side thrusts, within reasonable limits, in practically the same straight lines in which it receives the vertical thrusts, and so the tire is given comparatively great durability by making negligible the bending, creasing, and resultant heating and devulcanization from this source."

The tire was placed on the market in 1911, when solid and pneumatic tires were in use, and, because of its construction, it created a demand, and its merits became well known through actual, constant, and increased use. Other large manufacturers became licensees and paid substantial royalties. It was the first hollow center tire on the market, and its type of construction was not successfully met by other kinds of hollow tires. The appellant fully recognized that to meet appellee's competition it must, as it did, enter the market with its infringing tire and did displace sales of the appellee's tire. It hired a former sales manager of the appellee, and through

him and others solicited all the large customers of the appellee, stating that the infringing tire was like the appellee's but sold at a lower price.

■ The average net price actually received by appellee was $81.32 per tire, although it was obliged to give two discounts because of the appellant's competition. The master found, properly, that the appellant could not take advantage of any reduction in price caused by its own or any other infringer's wrongdoing, and, if there had been no infringement, there probably would have been a higher average price obtained. $13,000,000 worth of patented tires were actually sold at this average price during the infringing period. The average cost at which the patented tire could be manufactured and sold was found to be $55.57 per tire, and it was held below that there was "ample evidence from which the finding of that amount and each of its constituent elements could be made." It was noted that the cost of $55.57 included appellant's selling cost of $23.02 and the manufacturing cost of $32.55. It was shown that the manufacturing cost and selling cost were less to the infringer, but the master increased the material costs by 15 per cent., making liberal allowance to obtain the prices stated. The appellant is a much larger corporation than the appellee. The parent company was equipped for manufacturing solid and hollow center tires, and its production of such tires was estimated to be about ten times that of the appellee. It had numerous and well-organized marketing facilities.

■ While the appellee by a license would have given up the larger profit that it could have made on the extra business it might have obtained, yet the master conservatively adopted a royalty of $5 per tire. The appellee's costs were so high that it could make an average of but $8 per tire at the price of $81.32 per tire. But on extra business which it would give up by granting a license, its profit was estimated much higher, to wit, $23 per tire. Other large manufacturers of tires who took licenses under the patent paid as high as $5 per tire, in one form of payment or other, for the use of the patent rights. As the appellee puts it, assessing a royalty of $5 amounted to but one-fifth of the profits that could have been made on the patented tire, if there had been no infringement. We do not think the amount of the royalty was too high.

■■ The court below held that there was enough evidence, as found by the master, to support the claim that the infringement by the appellant was conscious and deliberate. There was protracted, vexatious, and expensive litigation indulged in, and obstacles were placed in the way of the appellee. Section 70 of title 35, U. S. Code (35 USCA § 70), provides that the court has power, in its discretion, to increase the damages a plaintiff suffers. The exercise of that discretion will not be reversed on appeal if there be justification and reason therefor. Wallace & Tiernan Co. v. City of Syracuse, 45 F.(2d) 693 (C. C. A. 2); Fox v. Knickerbocker Engraving Co., 165 F. 442 (C. C. A. 2). Unless it is made clear from the facts that there was no warrant for the increased damages, we have announced the rule that an increase of damages will not be disturbed. Metallic Rubber Tire Co. v. Hartford Rubber Works Co., 275 F. 315, 326 (C. C. A. 2). Moreover, the master recommended the increase in damages here because of the appellant's failure to keep a separate account of the infringing tires and upon the statement of this court characterizing the infringement as a "studied attempt over a period of years to approach gradually closer to the identical structure of the patent. * * *" We think the findings below are fully supported and justify the increased damages. No reason is advanced for interfering with that discretion. Reasonable royalty found, like actual damages, may be increased under the statute. In New England Fibre Blanket Co. v. Portland Telegram, 61 F.(2d) 648 (C. C. A. 9), it was recently held that an award of profit could not be increased even though the infringement was willful. This distinguished profits and damages. Reasonable royalty allowed here is general damage and not profits.

■ The appellant contends that some of the tires found by the master to have been infringing tires were improperly included, and it asks to eliminate them from the account. We have examined the drawings presented in support of the claim that 11,765 tires of Templet No. 442 and 33,854 of Templet No. 569 should have been excluded from the infringing tires, but within the holding of this court in 40 F.(2d) 460, we think that these tires infringe. They are pneumatic cushion tires brought out in 1923 and the superpneumatic tires brought out in 1927.

The appellant's two tires, SK and pneumatic cushion, contain the egg-shaped openings, while its third tire, superpneumatic cushion, had a nearly straight-sided triangular opening similar to that of the appellee's commercial embodiment of the patent. It was proved that the appellee's tire resisted the

stress brought on it in ordinary use without creasing and that this was also true of the appellant's second tire, pneumatic cushion with its egg-shaped opening, and its third tire, superpneumatic cushion with its tall triangular opening. Appellant's first tire was proved to crease and devulcanize in ordinary use so that it was a failure. Its second tire, pneumatic cushion, was successful, and both it and the first tire had egg-shaped openings very similar in appearance: There was proof that the part of the tire inclosed within the flanges, that is, above the line connecting the ends of the flanges, is not active in cushioning so that the shape of the flange engaged part of the tire and the shape of any part of the opening in this part of the tire is immaterial. The court accepted the proof as to the function of the flange free part and the lack of function of the flange engaged part and pointed out that the patent was concerned only with the flange free part of the tire and that the claim covered the making of the active part below the flange line in the form of two straight struts, leaving a triangular opening between them. When the case was here before and we considered the question of infringement, we directed attention to the flange free part of the appellant's three tires and pointed out the reason that the first was unsuccessful and the second and third successful. We said that in the second, pneumatic cushion, and the third, superpneumatic cushion, the portions of the tire below the flange line form two straight struts evidenced by the fact that part of the opening between them, that is, the part of the opening below the flange line, although slightly curved, might fairly be called triangular. We stated that it was not true of the SK tire whose flange free portion contained an egg-shaped opening with such inside curves between its widest point and the flange line, that the whole opening could not fairly be called triangular. By this we indicated a criterion of successful operation and of infringement. The arguments advanced by the appellant would lead to the conclusion that its pneumatic cushion and superpneumatic cushion tires are not infringements, but our opinion stated the contrary. The argument is that creasing under abnormal conditions would exclude the tires which we held did infringe, and the mathematical test of infringement would also exclude the tires which we have held infringed. This assertion of noninfringement cannot be supported. We think the number of infringing tires found by the master was justified by the record.

Decree affirmed.