REYNA, Circuit Judge,
concurring-in-part and dissenting-in-part.
The rule of finality is a bedrock principle of the federal judicial system. See Radio Station WOW v. Johnson, 326 U.S. 120, 123, 65 S.Ct. 1475, 89 L.Ed. 569 (1945). Its function is to “prevent[ ] the debilitating effect on judicial administration caused by piecemeal appellate disposition of what is, in practical consequence, but a single controversy.” Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 170, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); see also Nystrom v. TREX Co., 339 F.3d 1347, 1350 (Fed.Cir.2003) (“[Pjiecemeal litigation is as strictly precluded by the rule of finality for patent cases as it is for any other case.”). The rule of finality is so fundamental to United States jurisprudence that it has few exceptions.
The question we address en banc pertains to 28 U.S.C. § 1292(c)(2), which grants this court jurisdiction over appeals from judgments in patent infringement cases that are “final except for an accounting.” We took this case en banc to determine whether a trial on damages and a trial on willfulness is part of such an “accounting.” Part I of the majority opinion concludes that “an ‘accounting’ in the context of § 1292(c)(2) includes the determination of damages.” Majority Op. at 1313. Specifically, the majority holds that the term “accounting” encompasses a modern damages trial “and cannot be limited to a traditional equitable accounting of an in-fringer’s profits.” I agree with that conclusion.
In Part II, however, the majority holds that § 1292(c)(2) confers jurisdiction on this court to entertain appeals from patent infringement liability determinations when willfulness issues remain undecided. With this I cannot agree.
First, the plain language of § 1292(c)(2) does not unambiguously express Congress’s intent to exclude willfulness from the finality rule — indeed, it makes no mention of willfulness at all. Second, even if a case can be made that an “accounting” includes damages because both deal with the mechanics of compensation, an ac: counting bears no relation to the willfulness inquiry, which has little to do with damages and everything to do with liability for infringement. Third, if § 1292(c)(2) is interpreted to allow an appeal before a determination of willfulness is made, Congress’s purpose of avoiding needless expense wrought by piecemeal appeals in patent litigation will- be frustrated, not achieved. For these reasons, I respectfully dissent.
I
I begin my inquiry not with the historical meaning of “accounting,” see Majority Op. at 1309, but with the language of § 1292(c)(2). Conn. Nat’l Bank v. Germain, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) (“[I]n interpreting *1324 a statute a court should always turn first to one, cardinal canon before all others ... that a legislature says in a statute what it means and means in a statute what it says there.”); see also Neder v. United States, 527 U.S. 1, 20, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999).
Here, the key language in § 1292(c)(2) is the word “accounting.” The statute mentions neither damages nor willfulness. Regarding the former, because an accounting and damages both deal with compensation, I agree with the majority that whether Congress intended “accounting” to encompass damages is sufficiently ambiguous that it is appropriate to look to the “well-known meaning” of the term to illuminate Congress’s intent. With regard to willfulness, however, it is plain to me that the modern willfulness inquiry has little to do with the well-known meaning of an accounting or with damages. I see no ambiguity, and therefore no need to inquire further. Conn. Nat'l Bank, 503 U.S. at 254, 112 S.Ct. 1146 (“When the words of a statute are unambiguous, [the] first canon is also the last: judicial inquiry is complete.” (internal quotation marks omitted)). Under the plain meaning of the statute, an appeal may not be taken while willfulness remains undecided.
II
The majority does not inquire into the plain meaning of § 1292(c)(2). Instead, it begins its analysis at the second step, defining the term “accounting” in terms of its well-known meaning at common law. It identifies cases it claims show that an accounting included the determination of willfulness, but does not look critically at the nature of willfulness in those cases. Even assuming that we may look beyond the plain language of the statute, these cases do not persuade me that the common law meaning of “accounting” encompasses the modern willfulness determination.
To discern the well-known meaning of “accounting,” the majority examines eight cases in which willfulness was mentioned in connection with an accounting. Of these, five were reported prior to the 1927 enactment of § 1292(c)(2)’s predecessor statute. Each contains one or two sentences explaining that as part of an accounting, a special master made a finding of willfulness. None, however, contains any significant discussion as to what that finding entailed. Yet from these five passing references to willfulness, the majority concludes that there was a pre-1927 “practice of determining willfulness as part of an accounting.” Majority Op. at 1318. This conclusion succeeds only in substituting one question for another: if a pre-1927 accounting included a willfulness determination, what is the modern equivalent of that determination today? The majority does not answer this question.
The remaining three cases were decided between 1927 and 1953. In Pyle National Co. v. Lewin, the Seventh Circuit reversed a decision in which the district court awarded treble damages prior to conducting an accounting, concluding that “such a determination [could be made] only after the amount and character of the damages have been stated.” 92 F.2d 628, 631 (7th Cir.1937). In Overman Cushion Tire Co. v. Goodyear Tire & Rubber Co., 66 F.2d 361, 363 (2d Cir.1933), the Second Circuit upheld an award of enhanced damages where the district court had found the infringer’s behavior to be “conscious and deliberate.” And in Patterson-Ballagh Corp. v. Moss, the Ninth Circuit relied on Pyle and Overman for the proposition that a district court could “determine the question of willful infringement subsequent to the report of the [Special] Master rather than in the earlier proceedings upon the issues of validity and infringement.” 201 F.2d 403, 408 (9th Cir.1953).
*1325 In light of these cases, the majority concludes that “it is clear that an accounting, both prior to and after Congress’s grant of interlocutory jurisdiction - over cases that are final except for an accounting, included the determination of willfulness.” Majority Op. at 1319. But the majority does not inquire into the substance of the willfulness inquiry in those cases that it reads into the statute. In my view, the discussion of willfulness in these eight cases could equally have involved the special master’s determination of the amount, if any, by which damages should be enhanced — a question that is significantly different from — and should not be confused with — the modern willfulness inquiry. If by willfulness we mean the amount, the numerical factor, e.g., treble, by which damages are enhanced, then willfulness is a- damages issue and part of an accounting. But willfulness is more than the amount of enhancement, it is the litigation process that determines whether a factual and legal basis exists to support an enhancement. The factual and legal basis necessary to support a willfulness finding makes clear that willfulness is separate and distinct from damages, including the amount of any enhancement.
Ill
Upon a judgment of liability for infringement, a patentee may recover damages adequate to compensate for the infringement. See 35 U.S.C. § 284. Section § 284 also provides that “the court may increase the damages up to three times the amount found or assessed.” Although the damages statute contains no mention of willfulness, willfulness plays a role in the determining whether damages should be enhanced under § 284, a role that is starkly different today than it was in 1927. The majority conflates this difference.
A
The cases relied on by the majority show an understanding of willfulness much different than how we understand the term today. In those cases, the willfulness determination appears to have involved an inquiry into the mental state or conduct of the accused infringers. For example, in Boesch v. Graff, the special master concluded that the infringement was “willful, wanton, and persistent”; on appeal, the infringer urged that his behavior had been innocent. 133 U.S. 697, 699, 704, 10 S.Ct. 378, 33 L.Ed. 787 (1890). In Pollock v. Martin Gauge Co., the court equated willfulness with “reprehensible” conduct, but concluded that the issue must be determined by the special master in the first instance. 261 F. 201, 202 (7th Cir.1919). In K.W. Ignition Co. v. Temco Electric Motor Co., the special master awarded punitive damages based on the “willful and malicious conduct” of the defendants. 283 F. 873, 874 (6th Cir.1922). And in Reed Roller Bit Co. v. Hughes Tool Co., the court affirmed a finding of willfulness because the defendant acted in spite of his knowledge that his actions would infringe. 12 F.2d 207, 210 (5th Cir.1926).
These cases must be viewed in light of the legal landscape from which they arose. Then, as now, a district court “ha[d] power, in its discretion, to increase the damages a plaintiff suffers.” Overman, 66 F.2d at 362 (emphasis added). In such a case, “[t]he exercise of that discretion [would] not be reversed on appeal if there be justification and reason therefor. Unless it is made clear from the facts that there was no warrant for the increased damages, ... an increase of damages will not be disturbed.” Id. (citations omitted); see also Wallace & Tiernan Co. v. City of Syracuse, 45 F.2d 693, 695 (2d Cir.1930) (reviewing the decision to enhance damages for abuse of discretion); Fox v. *1326 Knickerbocker Engraving Co., 165 F. 442, 444-45 (2d Cir.1908) (same). Viewed against that backdrop, the discussion of willfulness in the cases relied upon by the majority appears to me to be related more to the enhancement of damages, such as declaring that punitive damages apply, and less to the modern willfulness inquiry.
B
The definition of willful patent infringement has changed significantly over time. Our most recent formulation of this standard originated in In re Seagate Technology, LLC, 497 F.3d 1360, 1368 (Fed.Cir.2007) (en banc). In Seagate, we abandoned the affirmative duty of due care from Underwater Devices Inc. v. Morrison-Knudsen Co., 717 F.2d 1380, 1389-90 (Fed.Cir.1983), and held that “proof of willful infringement permitting enhanced damages requires at least a showing of objective recklessness.” Seagate, 497 F.3d at 1371 (emphasis added). Seagate established a two-prong test for establishing recklessness. First, “a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.” Id. Once the “threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk ... was either known or so obvious that it should have been known to the accused infringer.” Id.
The first prong of Seagate requires proof that overlaps significantly with the question of liability for infringement. For example, this prong may involve questions of claim construction. See Cohesive Techs., Inc. v. Waters Corp., 543 F.3d 1351, 1374 (Fed.Cir.2008) (affirming a finding of no willful infringement because a term was “susceptible to a reasonable construction under which [the accused] products did not infringe”). It can be bound up in the infringement determination itself. See DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc., 567 F.3d 1314, 1336-37 (Fed.Cir.2009) (holding that the first prong was not met when “the record developed in the infringement proceeding ..., showfed] that the question of equivalence was a close one,” particularly in light of the intensely factual inquiry involved in the doctrine of equivalents analysis). It frequently involves whether the infringer has a reasonable defense to liability. See, e.g., Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc., 620 F.3d 1305, 1319 (Fed.Cir.2010) (“The ‘objective’ prong of Seagate tends not to be met where an accused infringer relies on a reasonable defense to a charge of infringement.”). None of these issues could reasonably be said to be part of an accounting.
The second prong of Seagate is closer to the willfulness inquiry performed by special masters as part of an accounting. This prong considers whether the objective risk from the first prong “was either known or so obvious that it should have been known to the accused infringer.” 497 F.3d at 1371. Ultimately, however, because the second prong is defined by reference to the first, this part of the willfulness inquiry cannot be viewed in isolation. This is especially true when induced infringement is at issue, because induced infringement is decided in part on the accused infringer’s state of mind. And, as with the first prong, the facts relevant to the in-fringer’s state of mind have little to do with damages or with an accounting.
“[W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed.” Mor *1327 issette v. United States, 342 U.S. 246, 263, 72 S.Ct. 240, 96 L.Ed. 288 (1952). The modern willfulness inquiry, as set forth in Seagate, was not in the cluster of ideas at: tached to the either “willfulness” or “accounting” when Congress passed § 1292(c)(2) or its predecessor. The Sea-gate inquiry bears little resemblance to the duty of care that it replaced, and even less resemblance to the special master’s willfulness determination in the cases relied on by the majority. I see no basis to retroactively import Seagate into § 1292(c)(2)’s exception to the rule of finality.
C
Seagate was careful to distinguish between the determination that infringement was willful and the decision of whether damages should be enhanced. Id. at 1368 (“[A] finding of willfulness does not require an award of enhanced damages; it merely permits it.”). Seagate’s holding carefully separates willfulness from enhancement: “proof of willful infringement permitting enhanced damages requires at least a showing of objective recklessness.” Sea-gate, 497 F.3d at 1371. This is so because a separate legal standard and standard of review govern the decision to enhance damages.
For example, in deciding how much, if any, to enhance damages, the district court must consider a variety of factors. See Read Corp. v. Portec, Inc., 970 F.2d 816, 826-27 (Fed.Cir.1992). In particular, this court has identified nine factors that may be relevant to determination of whether damages should be enhanced: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the in-fringer, when he knew of the other’s patent, investigated the patent and formed a good faith belief that it was invalid or that it was not infringed; (3) the infringer’s behavior in the litigation; (4) the infringer’s size and financial condition; (5) the closeness of the case; (6) the duration of the misconduct; (7) the remedial action by the infringer; (8) the infringer’s motivation for harm; and (9) whether the infringer attempted to conceal its misconduct. Id. The district court’s application of these factors is re-viewed for abuse of discretion. See i4i Ltd. P’ship v. Microsoft Corp., 598 F.3d 831, 858-59 (Fed.Cir.2010), aff'd, — U.S. -, 131 S.Ct. 2238, 180 L.Ed.2d 131 (2011).
The majority fails to recognize the distinction between the willfulness determination and the decision to enhance damages. In my view, the distinction is critical. Although it is difficult to discern much about willfulness from the cases upon which the majority relies, I find that the references to willfulness in those cases have more in common with the analysis under Read than with the analysis under Seagate — the determination of willfulness in the old cases is made in support of the decision to enhance damages and is reviewed for abuse of discretion.
I acknowledge an overlap between the second prong of Seagate and the Read factors. But the fact that some overlap exists is of little importance here because ultimately, neither prong of Seagate is remotely related to an accounting of damages. For example, objective reasonableness does not depend on the amount of lost profits or the reasonable royalty. The Read factors, on the other hand, relate almost exclusively to damages and not to liability. Thus, while there is substantial overlap between the operative facts and law of the liability inquiry and the Seagate test, there is virtually no overlap between operative facts and law of the damages inquiry and the Seagate test.
I therefore agree with the majority opinion to the extent that it can be read to hold that the term “accounting,” as used in § 1292(c)(2), includes the district court’s *1328 decision to enhance damages. I cannot agree that an “accounting” incorporates the current Seagate standard for determining willfulness, a standard that today is far removed from anything Congress might have intended § 1292(c)(2)’s predecessor to encompass in 1927.
IV
When Congress passed the predecessor to § 1292(c)(2), it expressed its belief that the availability of a pre-accounting interlocutory appeal was necessary to “prevent a great burden of expense to litigants in actions to determine the validity of patents.” H.R.Rep. No. 1890, 69th Cong., 2d Sess. 1 (1927). The majority believes that this statement of Congressional intent further supports its conclusion that interlocutory appeals should be available prior to a trial on damages, especially “[gjiven the substantial reversal rate of liability determinations on appeal.”[1] Majority Op. at 1316. In the context of willfulness, however, the Congressional intent points to an opposite conclusion. Allowing appeals pri- or to a determination on willfulness will force litigants to try and appeal virtually identical sets of facts and issues twice.
At trial, willful infringement is not treated as an “accounting.” To the contrary, juries are asked to decide whether the infringing conduct was carried out in the face of known risks. To prove infringement, a patentee must show the infringer made, used, or sold a product satisfying each element of the asserted claims. To prove that infringement was willful, a pat-entee must further show that the party in possession of the accused product engaged in that conduct despite its awareness of a looming risk of infringement. As it plays out in the context of a trial, before there is any consideration of compensation, a fact finder typically answers a “yes” or “no” as to whether the patentee has carried its burden in proving liability for infringement. The same “yes” or “no” question is posed for charges of willful infringement. In my view, it is not a coincidence that on the jury verdict form, the question for willfulness typically follows immediately after the jury instruction on liability.
The majority expounds its opinion upon theory whereas the reality of practice in the courtroom is in opposite. In presenting the factual elements of willfulness, the parties build a case that is bundled with proof of infringement. Often, this will include documents from the same technical custodians, testimony from the same witnesses, and attorney arguments that tie the framework set forth in Seagate to the actual people, products, and decisions that compel the presence or absence of willful infringement. The Seagate determination is inextricably intertwined with liability for infringement — they are two sides of the same coin. The damages issue, on the other hand, is a coin of an entirely different cast.
While the willful infringement inquiry is bound up with conduct, the damages inquiry is bound up with compensation. Willful infringement exists, or not, regardless of monetary consequences. Its only relation to damages is as a prerequisite to their enhancement. A patentee can prove its case for willful infringement without any mention of damages; it can prove its damages case without mention of liability or willfulness. If it succeeds in proving the former, the latter may be enhanced. This *1329 is a critical point of distinction between our modern willfulness framework and the historical “accounting” that is illuminated by the majority where willfulness and enhancement were not carefully separated.
Whether to enhance damages is a post-trial assessment reserved to the discretion of the court. It involves a two-step process.[2] Before a patentee can sit atop the summit and request a court to award enhanced damages, it must first climb the mountain by showing the objectively-defined risk and how the infringer disregarded that risk. Today, the willfulness inquiry is tied to the liability inquiry in that both must be tried and proved as threshold matters and in complete isolation from any consideration regarding compensation.[3]
To allow appeal of liability prior to infringement is to litigate — and probably to appeal- — what are essentially the same facts and the same law twice. I cannot extend § 1292(c)(2)’s limited exception to the rule of finality this far. Under the majority’s holding, § 1292(c)(2) will no longer achieve Congress’s goal of avoiding unnecessary expense — it will ensure that infringement trials are further delayed and needlessly expensive.
* * *
For the foregoing reasons, I would hold that interlocutory appeal is available prior to a determination on the enhancement of damages but is not available prior to the determination of willfulness. The majority having concluded otherwise, I respectfully dissent.

. This statement, I find interesting, especially in view that our high reversal rates are purported to be with respect to claim construction and not liability. Borrowing the majority’s reasoning, high reversal rates on liability would support my view that willfulness, as a component of liability, should not be left undecided. Of course, I do not believe that rates of reversal should be a basis for fashioning exceptions to the finality rule.

. It is well-established that the decision whether to grant enhanced damages as allowed under 35 U.S.C. § 284 requires a two-step process. Jurgens v. CBK, Ltd., 80 F.3d 1566, 1570 (Fed.Cir. 1996). "First, the fact-finder must determine whether an infringer is guilty of conduct upon which increased damages may be based. If so, the court then determines, exercising its sound discretion, whether, and to what extent, to increase the damages award given the totality of the circumstances.” Id.

. Of course, district courts maintain their discretion to bifurcate the liability and willfulness portions of a trial when concerns regarding prejudicial evidence or other compelling factors arise and I have complete trust in a district court’s ability to do so. It is up to the individual district courts to fashion a trial plan that best accommodates the court, the parties, and the facts of any particular case.