METSO MINERALS, INC., Plaintiff,

v.

POWERSCREEN INTERNATIONAL DISTRIBUTION LIMITED, Terex Corporation, Powerscreen New York, Inc. and Emerald Equipment Systems, Inc., Defendants.

No. 06–CV–1446 (ADS).

United States District Court, E.D. New York.

July 9, 2010.

Cohen, Pontani, Leiberman & Pavane LLP by: Michael C. Stuart, Esq., Lisa Ferrari, Esq., of Counsel, New York, NY, for the plaintiff.

Squire Sanders & Dempsey LLP by: George B. Yankwitt, Esq., Mary Margaret Chang, Esq., Andrew H. Fried, Esq., of Counsel, New York, NY, for all defendants.

Clauss & Sabatini, PC by: Ava R. Maynard, Esq., of Counsel, New York, NY, for defendant, Terex Corporation.

Forchelli, Curto, Schwartz, Mineo, Carlino & Cohn, LLP by: Andrew E. Curto, Esq., of Counsel, Mineola, NY, for the defendant, Powerscreen New York, Inc.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The defendants in this case, Powerscreen International Distribution Limited ("Powerscreen"), Terex Corporation ("Terex"), Powerscreen New York, Inc. ("PSNY"), and Emerald Equipment Systems, Inc. ("Emerald") presently move for reconsideration of the Court's previous order in this case, dated January 28, 2010, regarding claim construction, summary judgment, and evidentiary rulings. For the reasons that follow, the Court grants the defendants' motion in part and denies it in part. The Court also now rules on certain aspects of the plaintiff's previous motion for summary judgment that it has not yet decided.

## I. BACKGROUND

The relevant facts in this case are set forth in detail in the Court's previous decision in this matter. See *Metso Minerals, Inc. v. Powerscreen Intern. Distr., Ltd.,* 681 F.Supp.2d 309 (E.D.N.Y.2010) ("*Metso I*"). Familiarity with that decision is assumed, and the Court here only briefly

outlines the pertinent background in this case.

Plaintiff Metso Minerals, Inc. ("Metso") holds United States Patent 5,577,618 ("the '618 patent") for a "mobile aggregate material processing plant," a large industrial machine that is generally used to separate mixed rubble into piles of like-sized particles. The primary innovation claimed in the '618 patent is a method of folding the conveyors of the patented invention so that the plant is more easily transported. Metso asserts that the defendants manufacture and sell machines (called "screeners") that infringe the '618 patent (the "Accused Screeners"). The defendants deny infringement as well as the validity of the '618 patent.

In *Metso I*, the Court construed the claims of the '618 patent pursuant to *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed.Cir.1995) (en banc), *aff'd* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). In addition, the Court at that time considered motions by the plaintiff and the defendants for summary judgment, as well as a motion by the plaintiff to exclude certain evidence. Based on its construction of the '618 patent, the Court in *Metso I* granted in part and denied in part the plaintiff's motion for summary judgment, and totally denied the defendants' motion for summary judgment. The Court also granted the plaintiff's motion excluding certain drawings and testimony from being entered into evidence.

Now, the defendants have moved pursuant to Local Civil Rule 6.3 for reconsideration of portions of the Court's rulings on each of these motions. First, the defendants seek reconsideration of the Court's denial of the defendants' motion for summary judgment with respect to willful infringement. Second, the defendants seek reconsideration of the Court's construction of the claim terms "head articulation means" and "chassis". Third, the defendants seek reconsideration of the Court's exclusion of certain drawings and testimony from consideration at the trial. Fourth, the defendants seek reconsideration of the Court's grant of summary judgment in favor of the plaintiffs finding that the "head articulation means" is present in the Accused Screeners. The plaintiff opposes each of these requests.

In addition, the plaintiff has submitted a letter request that the Court rule on certain aspects of its previously-submitted motion for summary judgment. The Court now makes those rulings.

## II. DISCUSSION

### A. Legal Standard on a Motion for Reconsideration

 A motion for reconsideration in the Eastern and Southern Districts of New York is governed by Local Civil Rule 6.3. In general, "[t]he standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995). In addition, a Rule 6.3 motion "may not advance new facts, issues, or arguments not previously presented to the court." *Lehmuller v. Incorporated Village of Sag Harbor*, 982 F.Supp. 132, 135 (E.D.N.Y.1997) (citing *Walsh v. McGee*, 918 F.Supp. 107, 110 (S.D.N.Y.1996)). However, a motion for reconsideration may be granted to " 'correct a clear error or prevent manifest injustice.' " *Virgin Atlantic Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.1992) (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure

§ 4478 at 790). Ultimately, the decision of whether to grant a motion for reconsideration rests within the sound discretion of the district court. *Kapsis v. Bloom,* 08–cv–3092, 2009 WL 414001, at *1 (E.D.N.Y. Feb. 17, 2009).

## B. As to Willful Infringement

In their motion for summary judgment, the defendants requested that the Court find, as a matter of law, that the defendants had not willfully infringed the '618 patent. The Court denied that motion, stating that "the defendants have offered virtually no argument or law in support of this request." *Metso I,* 681 F.Supp.2d at 334. In their motion for reconsideration, the defendants point out that they discussed willful infringement at some length in their previous summary judgment briefing. The defendants thus request that the Court consider these arguments anew. Having reviewed the defendants' previous filings, the Court agrees that it did not directly address the defendants' arguments on this issue in *Metso I.* Therefore, the Court now briefly addresses those arguments.

To prevail on a claim of willful infringement, a plaintiff must show by clear and convincing evidence that an infringer knew or should have known that there was an objectively high risk that he was infringing the relevant patent. *See In re Seagate Technology, LLC,* 497 F.3d 1360, 1371 (Fed.Cir.2007). In addition, a defendant may demonstrate a lack of willful infringement by showing the presence of "both legitimate defenses to infringement claims and credible invalidity arguments." *Black & Decker, Inc. v. Robert Bosch Tool Corp.,* 260 Fed.Appx. 284, 291 (Fed.Cir.2008).

The defendants maintain that they are entitled to summary judgment denying the plaintiff's claim for willful infringement, because the defendants advance "both legitimate defenses to infringement claims and credible invalidity arguments." *Id.* Specifically, the defendants assert that they are entitled to summary judgment denying willful infringement because: (1) their non-infringement defenses, described in *Metso I,* are valid, (2) the defendants attempted to design around the '618 patent, (3) the '618 patent was invalid because it was obvious and because Richard Byrne was not named as an inventor, and (4) the '618 patent is unenforceable because the plaintiff engaged in inequitable conduct while prosecuting it.

In *Metso I,* the Court directly addressed (1) the defendants' non-infringement defenses, (2) the propriety of naming of Richard Byrne as an inventor, and (3) the plaintiff's alleged inequitable conduct during patent prosecution. Consistent with that discussion, the Court finds that there are genuine issues of fact with respect to whether these defenses preclude a finding of willful infringement.

As for the defendants' assertion that a willfulness finding is barred by (1) the obviousness of the '618 patent and (2) the defendants' attempts to design around the '618 patent, the Court notes that both parties have submitted substantial evidence and argument on each of these issues. Having reviewed this evidence and argument, the Court finds that there are genuine issues of fact regarding whether either issue precludes a finding of willful infringement. The defendants' motion for reconsideration concerning the Court's denial of summary judgment regarding willful infringement is therefore denied.

## C. As to the Construction of the Claim Term "Head Articulation Means"

The '618 patent claim term "head articulation means" is a means plus function claim, and therefore must be con-

strued by first identifying the function of the term, and then identifying the structures that carry out this function. *Metso I*, 681 F.Supp.2d at 322. In *Metso I*, the Court stated in this regard:

> The Court … construes the function of the "head articulation means" to be:
>
> connecting the head section to the tail section in such a way that the head section is movable from an operative position to a transport position with the head section extending longitudinally above the chassis and positioned with respect to the input hopper and material processing means so that it does not project laterally beyond the chassis.
>
> The Court finds the following structures to be necessary to carry out this function: a pivot joint, a connecting pin, a bushing, wing plates, and a holding plate. "Head articulation means" is therefore interpreted to incorporate these structures, and their equivalents.

*Id.* at 326.

The defendants do not challenge the Court's determination of the function of the head articulation means. However, the defendants do seek reconsideration of the Court's determination of which structures carry out this function. Namely, the defendants contend that the head articulation means should be construed to additionally comprise a "C-clip," the "tapered parts" of the head and tail sections of the conveyor, and a "hydraulic ram."

The Court addressed the construction of the term "head articulation means" in significant detail in *Metso I*, and specifically discussed the basis for the exclusion of the "C-clip," the "tapered parts", and the "hydraulic ram". *Id.* at 322–26. Having reviewed the defendants' submissions in support of reconsideration, the Court finds that there is no basis to alter the Court's previous construction of the term "head articulation means." The plaintiff's motion for reconsideration as to the construction of this term is therefore denied.

## D. As to the Construction of the Claim Term "Chassis"

In *Metso I*, the Court construed the claim term "chassis" to mean "the entire assembly of parts that rest beneath the plant support frame." *Id.* at 321. The defendants now challenge this construction, and advance a more limited construction of "chassis" that does not comprise, among other things, the wheels, wheel arches, tires, or support jacks that rest beneath the plant support frame.

The defendants challenge the Court's ruling based in large part on the Court's use of defendant Powerscreen's spare parts catalogue in construing the term "chassis." As described in *Metso I*, the Court construed the term "chassis" in part based on a Powerscreen spare parts catalogue that appeared to identify as a "chassis" the entire assembly of parts resting beneath the plant support frame of a screener. *Id.* at 321. The Court held that this evidence was consistent with the intrinsic evidence of the meaning of "chassis"—particularly the necessity that the term include the wheels and wheel arches—and therefore construed the term as described above. *Id.*

The defendants maintain that the spare parts catalogue on which the Court relied was not prepared contemporaneously with the drafting of the '618 patent, and that the catalogue is thus not an appropriate source for construing the term "chassis". Generally, a claim term has the meaning ascribed to it by those skilled in the art "as of the effective filing date of the patent application." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed.Cir.2005). The defendants interpret this rule to suggest that the Court should not consider

evidence of the meaning of a claim term—such as the Powerscreen spare parts manual—that post-dates the drafting of that term.

The Court finds that the defendants' arguments do not merit any adjustment to the Court's construction of the term "chassis." First, assuming that Powerscreen's spare parts manual was drafted after the '618 patent was prepared, the Court nevertheless finds that the manual provides circumstantial evidence of the meaning of "chassis" at the time the patent was drafted. While it is possible that the understanding of the term "chassis" evolved after the '618 patent was prepared, there is no evidence to support that contention. Rather, the Court finds it more likely that the Powerscreen spare parts manual reflected the same understanding of chassis that existed at the time the '618 patent was drafted, even if the manual itself was prepared later. Moreover, even without considering this extrinsic evidence, the Court finds that the construction of the term "chassis" as set forth in *Metso I* is correct.

The Court has reviewed the defendants' other arguments with respect to this term and found them to be without merit. The Court therefore denies the defendants' motion for reconsideration of the construction of the claim term "chassis."

### E. As to the Exclusion of Certain Evidence

The defendants further challenge the Court's exclusion of certain drawings of the Accused Screeners prepared by Joseph Daly, a Powerscreen product engineer manager. In *Metso I*, the Court excluded these drawings from evidence, as well as any derivative testimony based on them, because the drawings were not previously provided to the plaintiffs. The defendants now request that the Court permit the use of this evidence because, among other reasons, the drawings were not created until after the close of discovery. The Court does not view this reason, or any of the defendants' other proffered arguments, as a compelling basis to now permit the evidence excluded in *Metso I*. The Court therefore denies the defendants' motion to reconsider the exclusion of this evidence.

### F. As to the Court's Partial Summary Judgment that the "Head Articulation Means" is Present in the Accused Screeners

Finally, the defendants challenge the Court's previous finding that the "head articulation means" is present in the Accused Screeners. The defendants assert essentially three bases for this challenge: *First*, the defendants contend that the Court's current construction of "head articulation means" is wrong, and maintain that the correct construction would preclude partial summary judgment. *Second*, the defendants note that, under the Court's current construction of the term, the "head articulation means" comprises "wing plates" and a "holding plate". However, because there is no evidence showing that the Accused Screeners have either "wing plates" or a "holding plate", it was improper for the Court to grant a summary judgment finding that the Accused Screeners contain a "head articulation means". *Third*, the defendants note that the Court defined the "head articulation means" to function so as to permit the conveyors to fold so that they do not "project laterally beyond the chassis." *Metso I*, 681 F.Supp.2d at 326. However, the Court elsewhere found that there are material issues of fact as to whether the conveyors on the Accused Screeners do or do not "project laterally beyond the chassis." See *id.* at 332. According to the

defendants, the Court's finding that the head articulation means is present in the Accused Screeners is inconsistent with the Court's concurrent holding that there are issues of fact as to whether the conveyors of the Accused Screeners project beyond the chassis.

The Court has already addressed the defendants' contention that the present construction of "head articulation means" is erroneous, and found that there is no basis for modifying the present construction of this term. The Court therefore does not find this to be a sound basis for overturning its grant of partial summary judgment on this issue. However, the Court finds the defendants' other two bases for reversing the grant of summary judgment to be compelling.

■ With respect to the presence of "wing plates" and a "holding plate" in the Accused Screeners, the Court agrees with the defendants that the plaintiff has not submitted evidence that supports a finding that these structures are in the Accused Screeners. The plaintiff does not deny this failing, but rather contends that the defendants have either conceded, or waived their right to contest, this issue. However, in reviewing the parties' papers, and particularly the parties' Rule 56.1 statements, the Court finds that the defendants did not concede the presence of wing plates or holding plates in the Accused Screeners. Further, the Court finds that any failure to deny the presence of these structures is mitigated by the fact that the plaintiff never asserted that the "head articulation means" comprises "wing plates" or a "holding plate". Thus, the defendants were under no obligation to affirmatively deny the presence of these structures in the Accused Screeners.

Ultimately, the plaintiff retains the burden of proving infringement, and the Court finds that at this point, the plaintiff has not proven that the Accused Screeners have the "wing plate" or "holding plate" elements (or their equivalents) that form part of the "head articulation means". Thus, the Court reverses its previous ruling, and denies the plaintiff's motion for partial summary judgment with respect to the presence of a "head articulation means" in the Accused Screeners.

■ The Court also agrees with the defendants that the Court's finding that the Accused Screeners have a "head articulation means" conflicts with the Court's finding that there are issues of fact as to whether the conveyors on the Accused Screeners "protrude laterally beyond the chassis." As construed by the Court, the "head articulation means" must allow the conveyors to fold so that they do not protrude beyond the chassis. A structure that fails to carry out this function is not a "head articulation means" within the meaning of the '618 patent. Having found that there are issues of fact as to whether the alleged head articulation means on the Accused Screeners carry out this function, the Court must, for this reason also, reverse its previous ruling with respect to the presence of a "head articulation means" in the Accused Screeners.

Therefore, at trial, the plaintiff will retain the burden of showing that the screeners have a "head articulation means", as described in the '618 patent and construed by the Court.

### G. As to the Plaintiff's Request for Additional Summary Judgment Rulings

In its motion for summary judgment, the plaintiff sought a finding that the defendants of infringed claims 1 through 7 and claim 9 of the '618 patent. In *Metso I*, the Court addressed the contested elements of claim 1, and then in addition

granted the plaintiff partial summary judgment with respect to the uncontested elements of that claim. 681 F.Supp.2d at 334. However, at that time, the Court did not address the uncontested elements of claims 2 through 7 and claim 9, in spite of the fact that the plaintiff had requested summary judgment with regard to those claim elements. On May 3, 2010, the plaintiff submitted a letter to the Court requesting that the Court rule on this request. The defendant does not oppose this relief on its merits, but rather contends that the plaintiff has improperly and untimely moved for reconsideration of *Metso I*. In reviewing the relevant papers, the Court agrees with the plaintiff that the Court has not yet ruled on the plaintiff's request for summary judgment with respect to claims 2 through 7 and 9, and deems it appropriate to do so now.

Claims 2 through 7 and 9 of the '618 patent are derivative claims, and expressly incorporate claim 1. Thus, because there are genuine material issues of fact with respect to whether the Accused Screeners infringe all elements of claim 1, there remain triable issues of fact as to the infringement of claims 2 through 7 and 9. However, each of claims 2 through 7 and 9 contain additional elements that are not dependant on claim 1. Thus, the plaintiff seeks a finding that the Accused Screeners contain each of these additional, non-dependant, elements.

Having reviewed the parties' summary judgment papers, the Court agrees that the defendants do not challenge the presence of the additional elements described in claims 4 through 6, and also finds that the plaintiff has submitted evidence showing the presence of these elements. Thus, the Court grants partial summary judgment in favor of the plaintiff with respect to the additional, non-dependant, elements of claims 4 through 6.

Unlike claims 4 through 6, claims 2 and 3 contain additional, non-dependant elements that are related to the "head articulation means". As the defendants have presented evidence generally challenging the presence of the "head articulation means" in the Accused Screeners, summary judgment is not appropriate with respect to these additional elements that are related to the "head articulation means".

However, the defendants do not challenge the additional elements of claims 2 and 3 that are unrelated to the "head articulation means", and the plaintiff has submitted evidence showing that the Accused Screeners contain these elements. Thus, the Court grants partial summary judgment in favor of the plaintiff with respect to the additional elements of claims 2 and 3 that do *not* relate to the "head articulation means". The Court denies summary judgment with respect to the elements of claims 2 and 3 that do relate to the "head articulation means".

As for claims 7 and 9, the defendants challenge whether the Accused Screeners infringe the additional elements found in those claims. Claim 7 reads:

7. . A processing plant as claimed in claim 1 wherein the tail and head articulation means comprise a drive means for causing movement of the lateral conveyor between the operative and transport positions.

('618 patent, col. 8, lns. 23–26.) Claim 9 reads:

9. A processing plant as claimed in claim 7 wherein said tail articulation means comprises an hydraulic ram drive means mounted between the plant support frame and the tail section and said head articulation means comprises an

hydraulic ram drive means mounted between the tail and head sections.

(*Id.*, col. 8, lns. 32–36.)

■■■ Claim 7 specifically describes a "tail and head articulation means" that "comprise[s] a drive means for causing movement of the lateral conveyor between the operative and transport positions." ('618 patent, col. 8, lns. 24–26.) However, the defendants submitted evidence at summary judgment showing that the drive means in the Accused Screeners—that is, the hydraulic ram—is not part of the "tail and head articulation means". As described in *Metso I*, 681 F.Supp.2d at 323, the function of the head articulation means includes connecting the head section to the tail section. The tail articulation means is presumed to have a parallel function, including connecting the tail section to the plant support frame. By contrast, the defendants' evidence at summary judgment showed that the hydraulic ram in the Accused Screeners connects the *head section* of the conveyor to the *plant support frame,* and does not connect the head section to the tail section, or connect the tail section to the plant support frame. Thus, at least arguably, the Accused Screeners do not contain the "tail and head articulation means . . . [with] a drive means" that is described in claim 7. Summary judgment with respect to the additional elements in claim 7 is therefore not appropriate.

■■■ Claim 9 is similar to claim 7, except that claim 9 *explicitly* states that hydraulic rams must connect the head section to the tail section, and connect the tail section to the plant support frame. Again, the defendants' evidence shows that the hydraulic ram on the Accused Screeners does neither of these things, but rather connects the head section directly to the plant support frame. For this reason, summary judgment with respect to the additional elements in claim 9 is also not appropriate. Thus, the Court denies the plaintiff's motion for summary judgment with respect to the additional elements of claims 7 and 9 of the '618 patent.

## III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the defendants' motion for reconsideration of the Court's rulings on willful infringement, claim construction, and exclusion of evidence is denied; and it is further

**ORDERED** that the defendants' motion for reconsideration of the Court's finding that the Accused Screeners have a "head articulation means" is granted, and the Court reverses its partial grant of summary judgment in this regard, and denies the plaintiff's previous motion for a finding as a matter of law that the Accused Screeners have a "head articulation means"; and it is further

**ORDERED** that the plaintiff's motion for summary judgment with respect to the independent elements of claims 4 through 6 is granted; and it is further

**ORDERED** that the plaintiff's motion for summary judgment with respect to the independent elements of claims 2 and 3 is granted *except* to the extent that these claims contain additional elements related to the "head articulation means"; and it is further

**ORDERED** that the plaintiff's motion for summary judgment with respect to the independent elements of claims 7 and 9 is denied.

**SO ORDERED.**