# United States Court of Appeals for the Federal Circuit

---

**WESTERNGECO L.L.C.,**
*Plaintiff-Cross-Appellant*

**v.**

**ION GEOPHYSICAL CORPORATION,**
*Defendant-Appellant*

---

2013-1527, 2014-1121, 2014-1526

---

Appeals from the United States District Court for the Southern District of Texas in No. 4:09-cv-01827, Judge Keith P. Ellison.

-------------------------------------------------------------------

**WESTERNGECO L.L.C.,**
*Plaintiff-Appellant*

**v.**

**ION GEOPHYSICAL CORPORATION,**
*Defendant-Appellee*

---

2014-1528

---

Appeal from the United States District Court for the
Southern District of Texas in No. 4:09-cv-01827, Judge
Keith P. Ellison.

———————————

Decided:  September 21, 2016

———————————

GREGG F. LOCASCIO, Kirkland & Ellis LLP, Washington, DC, for WesternGeco L.L.C. Also represented by WILLIAM H. BURGESS, JOHN C. O'QUINN; TIMOTHY GILMAN, LESLIE M. SCHMIDT, New York, NY; LEE LANDA KAPLAN, Smyser, Kaplan & Veselka, LLP, Houston, TX.

DAVID J. HEALEY, Fish & Richardson, PC, Houston, TX, for ION Geophysical Corporation. Also represented by BAILEY KATHLEEN HARRIS, JACKOB BEN-EZRA, BRIAN GREGORY STRAND; FRANK PORCELLI, KEVIN SU, Boston, MA; OLGA I. MAY, FRANCIS J. ALBERT, San Diego, CA; JUSTIN BARNES, Troutman Sanders LLP, San Diego, CA.

———————————

Before DYK, WALLACH, and HUGHES, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* DYK.

Opinion dissenting in part filed by *Circuit Judge* WALLACH.

DYK, *Circuit Judge*.

This case returns to us on vacatur and remand from the Supreme Court, "for further consideration in light of *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 579 U.S. __ (2016)." *WesternGeco LLC v. ION Geophysical Corp.*, No. 15-1085, 2016 WL 761619 (U.S. June 20, 2016) (Mem.).  On remand, we vacate the district court's judgment with respect to enhanced damages for willful infringement under 35 U.S.C. § 284 and reinstate our earlier opinion and judgment in all other respects.  We

remand for further proceedings consistent with this opinion and with the Supreme Court's decision in *Halo*.

BACKGROUND

The vacated decision, *WesternGeco L.L.C. v. ION Geophysical Corp.* ("*WesternGeco II*"), 791 F.3d 1340 (Fed. Cir. 2015), addressed a patent infringement suit by WesternGeco L.L.C. ("WesternGeco") against ION Geophysical Corp. ("ION") for infringement of, *inter alia*, U.S. Patent Nos. 6,691,038, 7,080,607, 7,162,967, and 7,293,520. *See WesternGeco L.L.C. v. ION Geophysical Corp.* ("*WesternGeco I*"), 953 F. Supp. 2d 731 (S.D. Tex. 2013). The jury found infringement and no invalidity as to all asserted claims and awarded WesternGeco $93.4 million in lost profits and a reasonable royalty of $12.5 million. The jury also found that ION's infringement had been subjectively reckless under the "subjective" prong of the then-prevailing two-part test articulated in *In re Seagate, LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc).

After trial, WesternGeco moved for enhanced damages for willful infringement under 35 U.S.C. § 284. ION moved for judgment as a matter of law ("JMOL") of no willful infringement, contending that WesternGeco had failed to prove that it was either objectively or subjectively reckless in its infringement. The district court held that ION was not a willful infringer meriting enhanced damages, finding that ION's positions were reasonable and not objectively baseless and thus that the objective prong of the *Seagate* test had not been satisfied. *WesternGeco I*, 953 F. Supp. 2d at 753. Because the district court found no objective recklessness on the part of ION, it did not reach ION's JMOL motion seeking to set aside the jury's finding of subjective recklessness. *Id.*

ION appealed to our court, asking us, *inter alia*, to reverse the district court's award of lost profits. WesternGeco cross-appealed, challenging the district court's refusal to award enhanced damages. Our opinion issued

on July 2, 2015. *WesternGeco II*, 791 F.3d at 1340. In section III of that opinion, we reversed the lost profits award, holding that WesternGeco was not entitled to lost profits resulting from foreign uses of its patented invention. *Id.* at 1351. On this issue Judge Wallach dissented. *Id.* at 1354 (Wallach, J., dissenting-in-part). In section V of the opinion of the court, we unanimously affirmed the district court's denial of WesternGeco's motion for enhanced damages, holding that ION's noninfringement and invalidity defenses were not objectively unreasonable and, as such, we agreed with the district court that the objective prong of the *Seagate* test had not been met. *Id.* at 1353–54.

WesternGeco petitioned for certiorari on February 26, 2016. Petition for Writ of Certiorari, *WesternGeco, LLC v. ION Geophysical Corp.*, 2016 WL 792196 (U.S. Feb. 26, 2016) (No. 15-1085) ("Petition"). The petition, *inter alia*, requested that the petition be held in view of *Halo Electronics, Inc. v. Pulse Electronics, Inc.* and *Stryker Corp. v. Zimmer, Inc.*, which were argued February 23, 2016, and involved the standard for enhanced damages. WesternGeco's petition argued that "[i]f the result of *Halo* and *Stryker* is other than a complete affirmance and approval of Federal Circuit law, the Court should grant certiorari, vacate, and remand [("GVR")] for further consideration." *Id.* at *31.

The Supreme Court decided *Halo* on June 13, 2016. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. __, 136 S. Ct. 1923 (2016). The Supreme Court granted certiorari in this case and issued its GVR order on June 20, 2016, remanding the case to us "for further consideration in light of *Halo*." *WesternGeco*, 2016 WL 761619, at *1. We recalled our mandate on July 25, 2016. We now consider what action is appropriate in this case in view of the Supreme Court's remand.

DISCUSSION

The Supreme Court's *Halo* decision was solely concerned with the question of enhanced damages for patent infringement under 35 U.S.C. § 284 and does not affect other aspects of our earlier opinion.[1]  As such, we reinstate our earlier opinion except for section V.  Section V of

---

[1]    The opinion dissenting-in-part "join[s] the majority's opinion to the extent it applies the Supreme Court's decision in *Halo* on the issue of enhanced damages for willful infringement under 35 U.S.C. § 284 (2012)," but disagrees on the issue of lost profits, "for the reasons articulated in [the] original dissent."  Dissent at 2.  In fact, the issue of lost profits is not properly before us. WesternGeco's petition for certiorari presented two questions.  Petition, 2016 WL 792196, at *ii.  The first was lost profits—namely, "[w]hether the court of appeals erred in holding that damages based on a patentee's so-called 'foreign lost profits' are categorically unavailable in cases of patent infringement under 35 U.S.C. § 271(f)."  *Id.*  The second was "[w]hether the Court should hold this Petition for *Halo* and *Stryker*."  *Id.*  The scope of the Supreme Court's GVR order was limited to the second question. *WesternGeco*, 2016 WL 761619, at *1.  "The general rule is that, when the Supreme Court remands in a civil case, the court of appeals should confine its ensuing inquiry to matters coming within the specified scope of the remand." *Kotler v. Am. Tobacco Co.*, 981 F.2d 7, 13 (1st Cir. 1992); *see also, e.g.*, *Escalera v. Coombe*, 852 F.2d 45, 47 (2d Cir. 1988) (upon GVR, "[a]ny reconsideration at this juncture of our earlier opinion must be limited to the scope of the Supreme Court's remand"); *Hermann v. Brownell*, 274 F.2d 842, 843 (9th Cir. 1960) (on remand, "the jurisdiction of this Court is rigidly limited to those points, and those points only, specifically consigned to our consideration by the Supreme Court").

our earlier opinion was specifically directed to the question of enhanced damages, and it is that section that we now revisit.

I

Before *Halo*, under our court's two-part *Seagate* test, a patentee seeking enhanced damages for willful infringement was required to prove both an objective and a subjective prong. Under the objective prong, a patentee was required to "show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Seagate*, 497 F.3d at 1371. "If this threshold objective standard [was] satisfied," the patentee was then required to prove subjective recklessness, i.e., to "demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer." *Id.* If the patentee proved both prongs of willful infringement, the ultimate determination of whether to award enhanced damages under § 284 and the extent of any enhancement were left to the district court's discretion. *See id.* at 1368 ("[A] finding of willfulness does not require an award of enhanced damages; it merely permits it.").

The Supreme Court's decision in *Halo* overturned the *Seagate* test because it "'is unduly rigid, and it impermissibly encumbers the statutory grant of discretion to the district courts.'" 136 S. Ct. at 1932 (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1755 (2014)). *Halo* held that district courts must have greater discretion in awarding enhanced damages in cases where the defendant's infringement was egregious, cases "typified by willful misconduct." *Id.* at 1934. "The *Seagate* test reflects, in many respects, a sound recognition that enhanced damages are generally appropriate under § 284 only in egregious cases." *Id.* at 1932.

But, the Court held, "[t]he principal problem with *Seagate*'s two-part test is that it requires a finding of objective recklessness in every case before district courts may award enhanced damages." *Id.* In particular, the Court rejected *Seagate*'s strict requirement that a patentee prove the objective unreasonableness of an infringer's defenses. *Id.*; *see WBIP, LLC v. Kohler Co.*, No. 15-1038, 2016 WL 3902668, at *15 (Fed. Cir. July 19, 2016) (under *Halo*, "[p]roof of an objectively reasonable litigation-inspired defense to infringement is no longer a defense to willful infringement"). At the same time, *Halo* did not disturb the substantive standard for the second prong of *Seagate*, subjective willfulness. Rather, *Halo* emphasized that subjective willfulness alone—i.e., proof that the defendant acted despite a risk of infringement that was "'either known or so obvious that it should have been known to the accused infringer,'" *Halo*, 136 S. Ct. at 1930 (quoting *Seagate*, 497 F.3d at 1371)—can support an award of enhanced damages. "The subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." *Id.* at 1933; *see also id.* at 1930 (describing the second prong of *Seagate* as an evaluation of the infringer's "subjective knowledge").

Additionally, the Court stressed throughout *Halo* that, if willfulness is established, the question of enhanced damages must be left to the district court's discretion. So too, *Halo* stressed that "[a]wards of enhanced damages . . . are not to be meted out in a typical infringement case, but are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior." *Id.* at 1932. "[N]one of this is to say that enhanced damages must follow a finding of egregious misconduct. As with any exercise of discretion, courts should continue to take into account the particular circumstances of each case in deciding whether to award damages, and in what amount. Section 284 permits district courts to exercise

their discretion in a manner free from the inelastic constraints of the *Seagate* test." *Id.* at 1933–34. On remand from the Supreme Court, our court recently reconsidered enhanced damages in the case of *Halo* itself and, in returning the issue to the district court, emphasized the district court's discretion. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, No. 13-1472, 2016 WL 4151239, at *10 (Fed. Cir. Aug. 5, 2016).

After *Halo*, the objective reasonableness of the accused infringer's positions can still be relevant for the district court to consider when exercising its discretion. *Halo* looked to *Octane Fitness* for the relevant standard. *Halo*, quoting *Octane Fitness*, held that there is "'no precise rule or formula'" to determine whether enhanced damages should be awarded and that district courts should generally "'exercise[] [their discretion] in light of the considerations' underlying the grant of that discretion." *Halo*, 136 S. Ct. at 1932 (quoting *Octane Fitness*, 134 S. Ct. at 1756). *Octane Fitness* in turn held that, in determining whether to award attorney's fees under § 285, a district court should "consider[] the totality of the circumstances." *Octane Fitness*, 134 S. Ct. at 1756. In that connection *Octane Fitness* relied on "the comparable context of the Copyright Act," *id.*, noting that "[i]n *Fogerty v. Fantasy, Inc.*, for example, [the Court] explained that in determining whether to award fees under a similar provision in the Copyright Act, district courts could consider a 'nonexclusive' list of 'factors,' including 'frivolousness, motivation, *objective unreasonableness* (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence,'" *id.* at 1756 n.6 (emphasis added and internal citation omitted). Thus, objective reasonableness is one of the relevant factors. In short, as the Supreme Court itself has said, district courts should exercise their discretion, "tak[ing] into account the particular circumstances of each case," and consider all relevant factors in

determining whether to award enhanced damages. *Halo*, 136 S. Ct. at 1933–34.

## II

Here, in granting ION's motion for JMOL of no willful infringement, the district court found that WesternGeco had not proved that ION's defenses to infringement were objectively unreasonable and consequently concluded that the first, objective prong of the *Seagate* test had not been met. *WesternGeco I*, 953 F. Supp. 2d at 751. As *Halo* has rejected the *Seagate* rule that a patentee's failure to establish the objective recklessness of the defendant's infringement precludes a finding of willfulness, we must vacate the district court's determination of no willful infringement by ION.

On remand the district court must consider two questions. The first of these is subjective willfulness. The jury here was instructed on the *Seagate* standard for subjective willfulness.[2] The jury found that WesternGeco had "prove[d] by clear and convincing evidence that ION actually knew, or it was so obvious that ION should have known, that its actions constituted infringement of a valid patent claim." J.A. 77. We note that ION's renewed motion for JMOL contended that the jury's verdict of

---

[2] The jury was instructed to determine whether ION acted recklessly and to "consider all facts," including "(1) Whether or not the infringer acted in accordance with the standards of commerce for its industry; (2) Whether or not there is a reasonable basis to believe that the infringer did not infringe or had a reasonable defense to infringement; (3) Whether or not the infringer made a good-faith effort to avoid infringing the patent such as attempting to design a product the infringer believed did not infringe; [and] (4) Whether or not the infringer tried to cover up its infringement." J.A. 11096.

subjective willfulness was unsupported by substantial evidence. ION argued that "no reasonable jury could conclude that the subjective-prong of the willfulness inquiry was established by clear and convincing evidence." *WesternGeco I*, No. 4:09-cv-01827, ECF No. 559, at 16 (ION's renewed motion for JMOL of no willful infringement of Sept. 28, 2012). On remand, the district court must review the sufficiency of this evidence as a predicate to any award of enhanced damages, mindful of *Halo*'s replacement of *Seagate*'s clear-and-convincing evidence standard with the "preponderance of the evidence standard." *Halo*, 136 S. Ct. at 1934.[3]

---

[3]   ION did not waive its challenge to the willfulness verdict based on the lack of subjective willfulness by failing to raise it on the first appeal. At the time of the first appeal it had raised the issue in a JMOL motion but the district court did not decide that issue (the district court having ruled that there was a lack of objective willfulness, a ground then sufficient to set aside the willfulness verdict). *Laitram Corp. v. NEC Corp.*, 115 F.3d 947 (Fed. Cir. 1997) is similar to this case. There the jury found both infringement and willfulness. *Id.* at 949. The district court entered JMOL of non-infringement and did not reach the issue of willfulness. *Id.* On the patentee's appeal we reversed the judgment of non-infringement and remanded. *Id.* On a second appeal by the accused infringer the question was whether the accused infringer had waived a challenge to willfulness (and enhanced damages) by failing to argue it as an alternative ground on the first appeal. *Id.* at 953–54. We held that there was no waiver because the jury's finding of willfulness was "neither [itself] on appeal nor relevant to the sole issue that was: infringement . . . [and] properly considered moot—until the reversal of JMOL of non-infringement" on appeal. *Id.* at 954; *see also Eichorn v. AT&T Corp.*, 484

The second issue that the district court must consider on remand, if the jury's finding of willful infringement is sustained, is whether enhanced damages should be awarded. *Halo* emphasized that the question of enhanced damages under § 284 is one that must be left to the district court's discretion. The district court, on remand, should consider whether ION's infringement constituted an "egregious case[] of misconduct beyond typical infringement" meriting enhanced damages under § 284 and, if so, the appropriate extent of the enhancement. *Id.* at 1935.

CONCLUSION

For the foregoing reasons, we vacate the judgment of the district court of no willful infringement by ION and remand for further consideration of enhanced damages under § 284. As to other aspects of the district court's judgment, we hereby reinstate those aspects of our earlier judgment set forth in sections I–IV of our earlier opinion, which were not affected by the Supreme Court's order.

---

F.3d 644, 657–58 (3d Cir. 2007); *Indep. Park Apartments v. United States*, 449 F.3d 1235, 1240–41 (Fed. Cir. 2006); *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 738–41 (D.C. Cir. 1995).

Thus, this case is distinguishable from our recent decision in *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, where the accused infringer failed to raise the issue at the JMOL stage in district court or "challenge the propriety of the jury finding of subjective willfulness" on appeal. No. 13-1472, 2016 WL 4151239, at *10 (Fed. Cir. Aug. 5, 2016). We do not suggest that appellees in the future can avoid waiver by limiting discussion on the first appeal to just one aspect of the overall issue of enhanced damages since under the Supreme Court's decision in *Halo*, objective and subjective willfulness are no longer distinct issues.

**AFFIRMED-IN-PART, REVERSED-IN-PART, VACATED-IN-PART, AND REMANDED**

COSTS

Costs to neither party.

# United States Court of Appeals
# for the Federal Circuit

_____

**WESTERNGECO L.L.C.,**

*Plaintiff-Cross-Appellant*

**v.**

**ION GEOPHYSICAL CORPORATION,**

*Defendant-Appellant*

_____

2013-1527, 2014-1121, 2014-1526

_____

Appeals from the United States District Court for the
Southern District of Texas in No. 4:09-cv-01827, Judge
Keith P. Ellison.

----------------------------------------------------------------------

**WESTERNGECO L.L.C.,**

*Plaintiff-Appellant*

**v.**

**ION GEOPHYSICAL CORPORATION,**

*Defendant-Appellee*

_____

2014-1528

_____

Appeal from the United States District Court for the Southern District of Texas in No. 4:09-cv-01827, Judge Keith P. Ellison.

_____

WALLACH, *Circuit Judge*, dissenting-in-part.

I join the majority's opinion to the extent it applies the Supreme Court's decision in *Halo* on the issue of enhanced damages for willful infringement under 35 U.S.C. § 284 (2012). *See Halo Elecs. Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016). However, for the reasons articulated in my original dissent, *see WesternGeco L.L.C. v. ION Geophysical Corp.* (*WesternGeco II*), 791 F.3d 1340, 1354–64 (Fed. Cir. 2015) (Wallach, J., dissenting-in-part), I dissent-in-part from today's panel opinion, which reinstates our earlier opinion "in all other respects." Maj. Op. at 2.

The majority misunderstands the import of its prior holding, stating that my original dissent-in-part was from the panel's "holding that WesternGeco was not entitled to lost profits resulting from foreign uses of its patented invention." *Id.* at 4. It is of course uncontroversial that patentees are not entitled to lost profits resulting from foreign uses of a patented invention. *See Brown v. Duchesne*, 60 U.S. (19 How.) 183, 195–96 (1856) ("[T]he use of [the invention] outside of the jurisdiction of the United States is not an infringement of his rights, and he has no claim to any compensation for the profit or advantage the party may derive from it.").

Patentees are entitled, however, to lost profits resulting from infringement under the laws of the United States, which is what the jury found below, *WesternGeco II*, 791 F.3d at 1342 ("The jury found infringement . . . ."), what the district court found, *id.* at 1343 ("[T]he [district] court granted summary judgment of infringement."), and what was affirmed by this court on appeal, *id.* at 1347–49

(noting, inter alia, "the correctness of the infringement finding").

The key issue left unaddressed in the now-reinstated opinion's analysis is: When a patent holder successfully demonstrates both patent infringement under United States law and foreign lost profits, what degree of connection must exist between the two before the foreign activity may be used to measure the plaintiff's damages?[1]

---

[1] According to the majority, "the issue of lost profits is not properly before [this court]," Maj. Op. at 5 n.1, because "[t]he scope of the Supreme Court's [grant certiorari, vacate, and remand ('GVR')] order was limited to the second question [presented]," i.e., "'[w]hether the Court should hold this Petition for *Halo* and *Stryker* [*Corp. v. Zimmer, Inc.*, 136 S. Ct. 356 (2015) (mem.)],'" *Id.* (quoting Petition for Writ of Certiorari, *WesternGeco LLC v. ION Geophysical Corp.*, No. 2015-1085, 2016 WL 792196, at *1 (U.S. Feb. 26, 2016)). However, the majority reads the Supreme Court's GVR Order too narrowly. First, although the Supreme Court did not grant certiorari on the question of foreign lost profits in *Halo*, "a denial of certiorari has no precedential value." *Cty. of Sonoma v. Isbell*, 439 U.S. 996, 996 (1978). Second, the Order does not limit this court's review to a specific issue or question presented, as many GVR orders do. *See, e.g.*, *Herrmann v. Rogers*, 358 U.S. 332, 332 (1959) (limiting the appellate court's review on remand to a finite issue of Idaho property law). The GVR Order, in its entirety, provides:

> On petition for writ of certiorari to the United States Court of Appeals for the Federal Circuit. Petition for writ of certiorari granted. Judgment vacated, and case remanded to the United States

Put another way, left unanswered is the question of where we must draw the line as to when patented products or services made, used, or sold abroad (or some combination of these) may be considered in calculating damages flowing from infringement under Title 35 of the United States Code.  The issue is not one of infringement, where

---

Court of Appeals for the Federal Circuit for further consideration in light of *Halo* . . . .

Justice ALITO took no part in the consideration or decision of this petition.

*WesternGeco LLC v. ION Geophysical Corp.*, No. 2015-1085, 2016 WL 761619, at *1 (U.S. June 20, 2016).  The Supreme Court's only directive was that this court reconsider the prior opinion "in light of *Halo*," *id.*, which overturns the two-part test for enhanced damages and the tripartite framework for appellate review in *In re Seagate Technology, LLC*, 497 F.3d 1360 (Fed. Cir. 2007) (en banc).  *See generally Halo*, 136 S. Ct. 1923 (2016).  The Supreme Court neither directly addressed the merits of this court's holding on the issue of damages associated with both infringement under United States law and use on the high seas, nor does it preclude their consideration.  *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, Nos. 2013-1472, -1656, 2016 WL 4151239, at *2 (Fed. Cir. Aug. 5, 2016) ("[T]he Supreme Court's review was limited to the issue of enhanced damages and left undisturbed the judgments on other issues . . . ."); *see also* Maj. Op. at 5 ("The Supreme Court's *Halo* decision was solely concerned with the question of enhanced damages for patent infringement under 35 U.S.C. § 284 and does not affect other aspects of our earlier opinion." (footnote omitted)).

foreign use generally does not count,[2] but one of damages, where it may.

Rather than grapple with this difficult question of proximity, the majority avoids it altogether, considering the foreign lost profits in this case to relate solely to foreign use and to be wholly disconnected from the infringement found by the jury. By reinstating our earlier decision, the majority repeats, out of context, the statement from *Power Integrations* that "'the entirely extraterritorial production, use, or sale of an invention patented in the United States is an independent, intervening act that, under almost all circumstances, cuts off the chain of causation initiated by an act of domestic infringement.'" *WesternGeco II*, 791 F.3d at 1351 (quoting *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1371–72 (Fed. Cir. 2013)).[3]

---

[2]     Indeed, even in the infringement context, "foreign activity . . . can have an impact on the rights of a United States patent owner." *Lexmark Int'l, Inc. v. Impression Prods., Inc.*, 816 F.3d 721, 784 (Fed. Cir. 2016) (en banc) (10-2 decision) (Dyk, J., dissenting).

[3]     As recognized elsewhere in *Power Integrations*, the central issue in foreign lost profits cases is not whether the use or sale is "entirely extraterritorial," but the nature and degree of connection between the underlying infringement and the (perhaps entirely extraterritorial) foreign activity that most proximately led to the lost profits. *See* 711 F.3d at 1371 (noting that plaintiffs cited no case law supporting the use of "sales consummated in foreign markets, *regardless of any connection* to infringing activity in the United States," when calculating damages (emphasis added)); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 589 F. Supp. 2d 505, 511 (D. Del. 2008) (expressing

The statement in *Power Integrations*, however, addressed the patentee's argument that "having established one or more acts of direct infringement in the United States," the plaintiff should be able to "recover damages for [the defendant's] worldwide sales of the patented invention because those foreign sales were the direct, foreseeable result of [the defendant's] domestic infringement." 711 F.3d at 1371. If the statement is read too broadly, such that it prohibits any consideration of foreign activities when measuring damages, it conflicts with Supreme Court precedent holding that ordinary sales abroad can in some cases be used to measure damages resulting from domestic infringement. *See Goulds' Mfg. Co. v. Cowing*, 105 U.S. 253, 254–55 (1881); *Dowagiac Mfg. Co. v. Minn. Moline Plow Co.*, 235 U.S. 641, 650 (1915) (discussing *Goulds*'); *see also WesternGeco L.L.C. v. ION Geophysical Corp.*, 621 F. App'x 663, 664 (Fed. Cir. 2015) (9-3 decision denying the petition for rehearing en banc) (Wallach, J., dissenting); *WesternGeco II*, 791 F.3d at 1354–64 (Wallach, J., dissenting-in-part). Such a conflict should serve as a red flag, indicating that the approach taken by the panel may belong to the class of "'unduly rigid'" rules the Supreme Court has repeatedly cautioned against, including in its decision that led to the present remand. *Halo*, 136 S. Ct. at 1932 (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.,* 134 S. Ct. 1749, 1755 (2014)).

Not only is the approach taken by the majority unduly rigid, it is in substantial tension with Supreme Court guidance on the specific issue of (1) infringement under

---

concern that the "estimate [of the plaintiff's expert witness] of $30 million in damages was *not* related to parts that were manufactured, used, or sold in the United States by [the defendant]").

United States law followed by (2) use on the high seas. *Duchesne*—the very case cited by the majority for the proposition that lost profits based on foreign use are not compensable—illuminates at least one circumstance under which such foreign use *is* "compens[able]": Where the patented invention is "manufactured" or "sold" in the United States, the defendant is "justly answerable for" the resulting "advantage which [he] derived from the *use* of th[e] improvement . . . *on the high seas.*" 60 U.S. (19 How.) at 196 (emphases added); *see also WesternGeco II*, 791 F.3d at 1362 (Wallach, J., dissenting-in-part) (discussing *Duchesne*). The compensation in such a case is not for the foreign use itself, but for the damages caused when the defendant "diminished the value of [the plaintiff's] property" by "compet[ing] with the plaintiff," in the United States, "where the plaintiff *was* entitled to . . . exclusive use." *Duchesne,* 60 U.S. (19 How.) at 196 (emphasis added).

In reinstating its earlier decision, the majority expresses no concern for the consequences that may result from that decision. Creative lawyers, for example, may seek to insulate their clients from infringement liability by structuring market transactions so as to distance the infringer from the foreign activities, seeking to mirror the present case in which ION sells the device in question "to its customers, who perform surveys" on the high seas "on behalf of oil companies." *WesternGeco II*, 791 F.3d at 1343. When done for liability-avoidance reasons, such a change in form can increase costs without altering the underlying economic substance of the transaction.

Such efforts—and perhaps other unforeseen industry responses—would not only be wasteful, but would also result in unfairness to the patent owner, whose loss from the infringement remains the same regardless of the number of entities involved or the complexity of the underlying transactions. So long as there is a sufficient

connection between the infringement and the foreign activity, plaintiffs who successfully establish infringement under United States law should be able to rely on foreign activities to measure those damages adequate to "return the patent owner to the financial position he would have occupied but for the infringement." *Carborundum Co. v. Molten Metal Equip. Innovations, Inc.*, 72 F.3d 872, 881 (Fed. Cir. 1995).

Formulating a proper proximity standard—i.e., a standard that can be used to determine the sufficiency of the connection between infringement under United States law and foreign lost profits—is no easy task. There are some guideposts, however. For example, our case law has established that a party will not necessarily be able to recover damages equal to lost foreign sales simply because those lost sales would not have occurred "but for" the domestic infringement. *Power Integrations*, 711 F.3d at 1370 (finding the connection insufficient despite the argument of Power Integrations that it was entitled to damages based upon lost foreign sales it "would have made *but for* Fairchild's domestic infringement" (emphasis added)). It has established that "[w]here a physical product is being employed to measure damages for the infringing use of patented methods," the patentee may recover "when and only when" one of the actions specified in 35 U.S.C. § 271(a) (e.g., selling) "for that unit" takes place in the United States, "even if others of the listed activities for that unit (*e.g.*, making, using) take place abroad." *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1306 (Fed. Cir. 2015).

A unifying theme from these cases and others cited in my original dissent is that the appropriate measure of damages must bear some relation to the extent of the infringement in the United States. Thus, on the one hand, where the volume of non-infringing sales is independent of the extent of United States infringement,

those sales should not be used as a measure of damages flowing from the domestic infringement. For example, where a product is designed in the United States by an "infringing use of [the] patented method[]," *id.*, and units of the product are then "manufactured, sold, and used abroad," the number of units produced abroad bears little or no relationship to the extent of the infringement in the United States, *id.* at 1305 (internal quotation marks and citation omitted). This is because once a product is designed, an unlimited number of non-infringing units may be produced from that design.

At the other extreme, there may be a one-to-one relationship, or nearly so, between the infringement in the United States and the non-infringing foreign activity. In this case, each non-infringing unit or activity bearing such a one-to-one relationship with the infringing unit or activity is relevant to the damages calculation. *See, e.g.*, *R.R. Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 1519 (Fed. Cir. 1984) (Where a certain number of infringing "carsets" are manufactured in the United States and that same number is sold in a foreign country, each non-infringing foreign sale is relevant.); *cf. State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1575 (Fed. Cir. 1989) (Where a patented method is used to produce each non-infringing water heater, the number of water heaters sold is relevant to the damages calculation.).

The present case appears to lie somewhere in between these extremes. As described by the majority, the patent-practicing devices sold by ION are combined (and then used) in non-infringing streamer systems on the high seas, in a manner that would infringe if the combination occurred within the United States. *See WesternGeco II*, 791 F.3d at 1348. Because each streamer system contains some number of devices, *id.* at 1343, the volume of infringing activity in the United States bears some relationship to the number of streamer systems used on

the high seas, and the number of streamer systems in turn bears some relationship to the volume of lost sales. At the same time, however, because a given streamer system could presumably be used more than once, the volume of infringing activity in the United States may not bear a one-to-one relationship with the volume of lost sales. As with damages questions generally, complex factual issues such as these may exist regarding the relationship between the infringing acts and the units or activities used to measure the patentee's resulting losses.

The importance of such complex factual issues to the damages calculation explains why discretion is afforded to district courts and juries in arriving at an appropriate damages figure. *See AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1333 (Fed. Cir. 2015) ("The amount of damages awarded to a patentee . . . is . . . reviewed for *clear error*, while the methodology underlying the court's damages computation is reviewed for *abuse of discretion*." (emphases added)); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1310 (Fed. Cir. 2009) ("We review the jury's determination of the amount of damages, an issue of fact, for *substantial evidence*." (emphasis added)). An unduly rigid rule barring the district court from considering foreign lost profits even when those lost profits bear a sufficient relationship to domestic infringement improperly cabins this discretion, encourages market inefficiency, and threatens to deprive plaintiffs of deserved compensation in appropriate cases. Accordingly, I again respectfully dissent-in-part.